FILED

09/28/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs July 19, 2017

## STATE OF TENNESSEE v. DOUGLAS ARTHUR VINCENT

**Appeal from the Circuit Court for Sequatchie County**
**No. 2015CR78    Thomas W. Graham, Judge**

_____

### No. M2016-02530-CCA-R3-CD

_____

The defendant, Douglas Arthur Vincent, appeals his Sequatchie County Circuit Court guilty-pleaded conviction of rape, claiming only that the trial court erred by imposing the maximum available sentence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

B. Jeffrey Harmon, District Public Defender, for the appellant, Douglas Arthur Vincent.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Steven H. Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Originally charged with one count each of the aggravated rape, incest, and aggravated sexual battery of his adult daughter, D.V.,[1] the defendant pleaded guilty to a single count of the lesser included offense of rape as a Range II offender, with the length of service of the sentence to be determined by the trial court following a sentencing hearing. The State summarized the facts of the offense at the guilty plea submission hearing:

> [I]f this matter came to trial, the State would be calling Keith
> Herron, who is now with [the] Tennessee Bureau of

_____

[1]     As is the policy of this court, we refer to the victims of sexual assault by initials to protect their anonymity.

Investigation ["TBI"] as its primary law enforcement witness, although other officers did work on this. The State would be showing that on April 14, 2015, in Sequatchie County officers were dispatched to . . . meet with the victim . . . [on an] allegation of a sexual assault that had occurred in the Deer Head community . . . . The victim was taken to the sheriff's department, or followed the officers to the sheriff's department. She did make a statement to law enforcement that her biological father, [the defendant], had sexually penetrated her by force . . . .

From there the victim was taken to the Rape Crisis Center in Chattanooga. She was examined by . . . Bonnie Kidd[, who] would testify that she has been through the appropriate training, that she is a licensed nurse in the State of Tennessee, [and] has also received specialized training in forensic nursing. She examined the victim in this case. She would testify that [the victim] suffered from bruising in the vaginal area. Also that there was evidence of the [p]etechiae, which [are] broken blood capillaries in the vagina. Nurse Kidd would testify that this indicates that . . . [the victim's] vagina was not ready for sexual intercourse and that . . . these findings are consistent with the victim being forcibly raped. She also prepared a rape kit. She took swabs from the victim. Collected clothing et cetera. That she placed those [items] into evidence at the Rape Crisis Center. . . . Agent Herron would testify that he went by the Rape Crisis Center several days later, picked up the rape kit, and submitted it to the [TBI] along with . . . buccal swabs from the victim as well as from the defendant.

TBI Agent Gregory Foster would testify that he is a forensic scientist with the [TBI], has testified as an expert, and would be qualified to testify as an expert witness in the area of forensic biology. He would testify that – that on anal swabs, vaginal swabs, and also the underwear from the victim that sperm, that the DNA would identify as coming from the [d]efendant . . . were found.

The victim would testify that . . . she was with her father on that particular night. That, at the preliminary

hearing she stated that he did stuff that no father should do to his child. She went on to describe that [the defendant] without her consent sexually penetrated her, and that this occurred in Sequatchie County.

She would also testify that [the defendant] was her biological father, and that she had been taken by her mother, I believe, to Texas, [and] had a very limited relationship with him for a number of years. She's approximately 22 years of age when this happened. That she had come to Sequatchie County partly in the hope of having a relationship with her father, and that would essentially be the State's proof in this case.

At the sentencing hearing, the State introduced into evidence the presentence investigation report, which established that the 43-year-old defendant had a criminal history that spanned more than 20 years and that included four prior felony and multiple misdemeanor convictions. The State also introduced into evidence a four-page, handwritten statement from the victim, in which she described in detail the physical and emotional toll that the defendant's assault had taken on her. The defendant introduced into evidence a brief statement in which he expressed remorse for his actions and apologized to the victim, as well as a second statement in which the defendant explained certain alleged discrepancies in the presentence report and listed jobs that he had held in the past.

Glenda Pinkerton, the common-law wife of the defendant's brother, testified that she had known the defendant for 24 years and that the defendant had assisted Ms. Pinkerton's elderly mother with yard work and house repairs on multiple occasions without accepting payment. Ms. Pinkerton stated that the defendant had also helped her and his brother with car repairs and anything else they needed. On cross-examination, Ms. Pinkerton admitted that although the defendant had held "odd and end little things," he had held no steady employment during the past several years.

Angelica Pinkerton, Glenda Pinkerton's daughter, testified that she had spent "a whole lot" of time around the defendant and that he had been instrumental in "k[eeping her] spirits up" following a miscarriage. She also stated that she believed the defendant had "always worked" as a mechanic.

At the conclusion of the hearing, the trial court determined that the defendant's Range II sentence for the Class B felony of rape rendered him ineligible for probation because the minimum available sentence was 12 years. The court then applied

five enhancement factors: that the defendant had a previous history of criminal convictions in addition to those necessary to establish the range; that the defendant treated the victim with exceptional cruelty; that the offense was committed for the purpose of gratification; that the defendant abused a position of trust; and that the defendant had previously failed to comply with conditions of a sentence involving release into the community, noting that the defendant had thrice had his probationary sentences revoked. Of these five factors, the court stated that the abuse of trust was "very significant," stating that there was "no greater trust than a parent and child relationship" and "this enhancing factor is probably the most odious and gross." The court also considered the defendant's social history to be "troubling" due to his "lack of clear employment" and his failure to significantly support any of his six children. The court found no mitigating factors to be applicable. With respect to the victim impact statement, the court found that the victim "explain[ed] in vivid detail how this has just destroyed her life," and the court was "satisfied that most of what she's saying can be justified and is true." Ultimately imposing a sentence of 20 years' incarceration, the court concluded its findings by stating that "this is about as bad, and maybe is the worst of the worst, short of death, this was about as bad a crime as a rape can be."

In this timely appeal, the defendant argues that the trial court erred by sentencing the defendant to the maximum available sentence. Specifically, the defendant contends that the trial court misapplied certain enhancement factors and failed to properly consider mitigating factors, such as the defendant's expression of remorse. The State argues that the sentence was appropriate.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in Bise, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

We need not tarry long over the defendant's claim because, even assuming the trial court misapplied or failed to apply certain enhancement or mitigating factors, "a

- 4 -

trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. Nothing in the record suggests that the trial court in this case "wholly departed from" the Sentencing Act. To the contrary, the record reflects that the trial court considered all relevant principles associated with sentencing, including the enhancement and mitigating factors, when imposing this within-range sentence. Thus, we conclude that the record fully supports the 20-year sentence imposed in this case.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE